FIRE PROTECTION DEVELOPMENT COMPANY, APPEL-
LANT, v. AMERICAN DISTRICT TELEGRAPH COM-
PANY, RESPONDENT.

Argued June 19, 1917—Decided June 17, 1918.

By a contract, binding upon both parties to this litigation, it was
agreed that the gross income received from the operation of a
manual fire alarm system in which they were jointly interested
(after deducting certain rentals), should be divided in the pro-
portion of fifty-five per cent. to the respondent and forty-five per
cent. to the appellant. *Held*, that, under the facts recited in the
opinion, the appellant was entitled to receive its forty-five per
cent. without any deduction for repairs to or taxes assessed against
the said fire alarm system.

On appeal from the Supreme Court.

For the appellant, *Magoffin & Signor, John W. Griggs* and
*Martin Conboy* (of the New York bar).

For the respondent, *Kinsley Twining* and *Rush Taggart*
(of the New York bar).

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.  This is a controversy over the
division of receipts coming from the operation of a manual
fire alarm system in the city of New York.  The trial was
had before Judge Adams, sitting without a jury, and resulted
in a judgment for the defendant.  From this judgment the
plaintiff appeals. ·

In order to understand the respective claims of the parties
in the present suit, a rather detailed account of the history
of their contractual relations is necessary.

On February 18th, 1904, one Robert L. McElroy, who
owned patents for a manual fire alarm system, entered into an
agreement with the defendant company, a corporation of this
state, whereby his system was to be operated by it over its

lines in all places where those lines existed, or might thereafter be constructed. Under this agreement many reciprocal duties and obligations were imposed, of which the following throw light upon the question to be determined: McElroy was to manufacture all of the devices and apparatus which were to be used under the contract, and to deliver them to the defendant company free. He was also to put canvassers to work to solicit subscribers in the various cities of the United States where this system was to be put in operation. This, also, he was to do at his own expense. The defendant company was to equip central offices, to run wires therefrom to the buildings of the customers who should be obtained by McElroy; to install at its own cost the McElroy devices in these buildings, and to operate and maintain the system, making such ordinary repairs thereto as might be necessary to preserve the same in first-class working order. The company was also to collect from the subscribers of McElroy all of the rentals which the said subscribers under their contracts were to pay for the use and operation of the electrical devices covered by the contract, and to keep a just and accurate account of all the moneys so collected, and to remit and pay to McElroy each month forty-five per cent. of the gross rentals which it should collect.

In April, 1905, McElroy assigned all of his rights under this contract to a corporation of the State of Maine known as the Automatic Fire Protection Company, and that corporation assumed all of his obligations thereunder.

At the time of the assignment the contract referred to was not operative in the city of New York because of the fact that the defendant company had no property or franchises there. A purely manual fire alarm service, however, was being carried on in that city by a New York corporation known as the Special Fire Alarm Electrical Signal Company, and on the 27th of July, 1905, the Automatic Company took a lease from this New York corporation of all its business, assets and franchises of every name and nature for a period of forty-nine years, the business to be transferred as a going concern. The annual rental to be paid was the sum of $5,000, and the

550    COURT OF ERRORS AND APPEALS.

Fire Protection Dev. Co. v. Am. Dist. Tel. Co.    91 N. J. L

Automatic Company also covenanted to keep the property in good condition, make all necessary repairs, and pay all taxes and assessments. The defendant company guaranteed the lease and the payment of the consideration called for by it. The lessor company, however, continued to operate the plant until the 21st of August, 1905, and on that day, apparently, turned it over to the possession of the defendant company. The expense of operation between the dates mentioned was paid by the defendant, as appears from a letter of its superintendent written on the latter day. Thereafter the defendant company continued in the full control of the leased property, and in the sole operation of it, including the collection of rentals from subscribers.

No formal instrument declaring the respective rights and obligations of the Automatic Company and of the defendant in the leased property was executed until October 12th, 1905. On that day a contract was entered into between them, which, after reciting that one of the purposes and considerations for the lease with the Special Fire Alarm Electrical Signal Company was to secure fire department connections for the National District Company, a subsidiary of the defendant (no other purpose being disclosed in the agreement), and that the rentals from subscribers were being received by the defendant; then provided that out of the gross income received by it from the business and contracts aforesaid there should be first paid, during the term of the lease, the annual rental of $5,000, and that the *remainder of the gross income* which should be received by the defendant during the term of the lease for manual signal service in the city of New York, up to the aggregate of $29,000, remaining after deducting the said $5,000 rental, should be divided between the Automatic Company and the defendant in the following proportions: forty-five per cent. to the Automatic Company, fifty-five per cent. to the defendant; and that all income in excess of $29,000 should be retained and enjoyed by the defendant for its own use.

On April 29th, 1909, by an agreement made between the Automatic Company and the present plaintiff (The Fire Pro-

tection Development Company), the latter corporation succeeded to the rights and obligations of the Automatic Company under the agreements and lease above recited.

The documents thus referred to, and the provisions thereof which have been recited, constitute all of the documentary evidence necessary to be considered.

Turning to the other facts in the case we have the following:

From the date of the lease of 1905 until May 25th, 1912, the defendant paid over to the Automatic Company, and afterwards to its successor, the present plaintiff, the full forty-five per cent. of the gross income, after the deduction of the $5,000 rental. On the latter date, conceiving that under the McElroy contract of February 18th, 1904, they were entitled to deduct the expense of service contract solicitation, and moneys expended in the construction of devices and manual fire alarm apparatus, out of the share of the gross income payable to the plaintiff, they proceeded to make such deduction. On the 1st of April, 1913, the defendant claimed the right to deduct also from the plaintiff's share of the gross proceeds all necessary repairs made to the leased property, and all taxes and assessments paid thereon.

The right to make this latter deduction is challenged by the present litigation, and is the sole question presented to us for determination.

The fact that the contract of October 12th, 1905, between the Automatic Company and the defendant (which shows on its face that it was prepared by a skilled draftsman) provided that after deducting the rental to be paid to the Special Fire Alarm Electrical Signal Company, forty-five per cent. of the gross income received by the defendant company from the operation of the leased property should be paid to the Automatic Company, and that it contains no suggestion that this forty-five per cent. should be subject to any deduction to be made by the defendant, is significant of the intention of the parties to it with relation to the matter now under consideration. And this significance is emphasized by the further fact that the acquisition of the leased property was

552     COURT OF ERRORS AND APPEALS.

Fire Protection Dev. Co. v. Am. Dist. Tel. Co.     *91 N. J. L.*

concededly for the purpose of enabling the defendant company to secure fire alarm connections in the city of New York.

The fact that, up to the time of the execution of that contract, and ever since, the cost of maintenance and repair of all the various manual fire alarm systems in the operation of which the parties are jointly interested is, by ·mutual agreement, to be borne solely by the defendant company, is a further indication of the purpose of the parties. ·

So, too, the fact that from the time when the defendant company took over the leased property in 1905, up to April 1st, 1913, the defendant company paid-out of its own treasury the whole cost of the maintenance and upkeep of the manual fire alarm system leased from the Special Fire Alarm Electrical Signal Company, including the taxes and assessments laid against the property, without any claim that it was doing so solely for the benefit of the Automatic Company and its successor, the plaintiff, or that either of them was liable to repay these expenditures, is a very potent aid in determining the scope of the contract, for it amounts to a practical construction put by the parties upon this portion of their agreement, and is difficult to explain except upon the theory that both parties understood that · these payments were in discharge of an obligation resting solely upon the defendant company, under the contract.

We find nothing in the case to diminish the force of this congerie of facts, unless it be the provision of the lease made by the Special Fire Alarm Electrical Signal Company to the Automatic Company, by which the latter binds itself to pay the cost of maintaining and repairing the leased property, and paying the taxes and assessments thereon, during the term of the lease.

We are of opinion, however, that this covenant, although it binds the lessee company and its successors so far as the lessor company is concerned, has no bearing upon the obligation of the plaintiff or the defendant, as between themselves, to meet these expenses. If we should hold otherwise, that is, if we should conclude that it was the intention of the Automatic

Company and the defendant that the plaintiff and its predecessor should bear all the burden imposed on the lessee by the terms of the lease, except to the extent they were exonerated by the agreement of October 12th, 1905, then we would be driven to say that in the absence of any such agreement the parties must be presumed to have intended that all of this burden should be borne by the Automatic Company and its successor, notwithstanding the fact that the defendant company was at once to receive the whole of the leased property, operate it, and collect all of the rentals from the subscribers; in other words, that the defendant company should enjoy all of the benefits flowing from the possession of the leased property and its operation, without any obligation to pay any part of the rentals, or contribute a penny toward its upkeep.

The conclusion we reach, therefore, is that the plaintiff was entitled to receive from the defendant its forty-five per cent. of the gross income derived from the operation of the manual fire alarm system held under the lease from the Special Fire Alarm Electrical Signal Company, without any deductions for maintenance, repairs, taxes or assessments, and that, consequently, the judgment under review must be reversed.

*For affirmance*—BLACK, WILLIAMS, JJ.   2.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, WHITE, HEPPENHEIMER, TAYLOR, GARDNER, JJ.   12.